SWIFT & COMPANY v. NEW BERN PRODUCE COMPANY.

(Filed 15 September, 1920.)

1. **Principal and Agent—Vendor and Purchaser—Fertilizer—Commissions —Estimates—Sales.**

   A sale of fertilizer upon commission, whereunder the agent was to obtain estimated amounts from the purchasers, sales to be approved by the principal, shipped out direct to the purchasers when they sent in their orders, and the commissions *were due* only *when* the fertilizers had been paid for, does not entitle the agent to commissions on fertilizers on the estimates furnished, but only on such for which the orders were given and paid for by the purchasers.

2. **Principal and Agent—Commissions—Vendor and Purchaser—Fertilizer —Wastage—Damages.**

   When fertilizers are consigned to the selling agent, to be sold upon commission, title retained by the vendor, and the agent to render a statement to him at designated time, and return the unsold part of the consignment, the agent cannot recover for wastage by reason of the sacks not having been properly sewed, when it established that the agent had been paid his commissions in full.

3. **Principal and Agent—Vendor and Purchaser—Contracts—Wastage— Fertilizer.**

   A selling agent of fertilizer, upon commission, may not recover for wastage by reason of insecurely sewed sacks, when he has not complied with a stipulation in his contract providing that "all claims of whatsoever nature must be made within ten days of the receipt of the fertilizer, or they will not be recognized," and had not paid the vendees for any shortage by reason of such waste.

APPEAL by defendant from *Bond, J.,* at Spring Term, 1920, of PASQUOTANK.

This case was heard on the exceptions to the report of a referee, by *Bond, J.,* at Spring Term, 1920, of Pasquotank. The court sustained all the findings of fact to which the defendants did not except, but they excepted to his overruling certain exceptions as to the law, and appealed from the judgment.

*W. A. Worth and Aydlett & Simpson for plaintiff.*
*Meekins & McMullan for defendant.*

CLARK, C. J.  On 27 November, 1916, the plaintiff and the defendant companies entered into two contracts.  By exhibit "A" the plaintiff appointed the defendant company "its agent to sell fertilizer on a commission of $1 per ton for *actual deliveries.*"  Under this contract the fertilizer was not delivered to the defendant company, but was shipped direct to parties whose names were sent in by the defendant company to the plaintiff.  Some of these parties had sent in estimates of the amount of fertilizer they would require, and made written agreements with the defendant for that amount, but four of these parties subsequently failed to order out in the aggregate 618½ tons of the total amount they had agreed to order out.

The referee allowed the defendant company commissions on all the fertilizer that was actually ordered out and shipped, but declined to allow commissions on the 618½ tons which the parties failed to order.  These parties testified that they would have ordered out more but for the delay in the shipping.  The referee finds "that the failure on the part of Swift & Company to make prompt deliveries, while not a willful failure, was not due to causes beyond its control, and was so prolonged as to induce a reasonable apprehension in the minds of the buyers that further orders, if made, would not be filled in time for use."

Said contract "A" appointed the defendant company "agent" of Swift & Company for the sale of its fertilizer, and agreed "to pay said agent in full for all services rendered and expenses incurred hereunder the following commissions, based upon actual number of tons of fertilizer actually delivered: one dollar ($1) per ton due and payable only when all notes and accounts accruing hereunder have been paid in full to principal."  It was further stipulated, "All contracts for sale shall be subject to approval by Swift & Company, at its office in Baltimore."  In view of the above provisions, the above company was not entitled to commissions on the 618½ tons which the parties before named failed to order out.  The plaintiff did not refuse to deliver the goods.  They could only deliver upon order from these parties.  If the plaintiff had shipped the fertilizer without orders, these parties would have been under no obligation to receive it.  Besides, if ordered, the plaintiff had the option to refuse the order or to approve it.

The court properly sustained the ruling of the referee that the defendant company was not entitled to a counterclaim of $1 a ton for the fertilizer which parties had agreed to order, but subsequently had failed to do so.

The second contract, exhibit "B," made at the same time, constituted the defendant company "its agent for the sale of such of its different brands of its fertilizers mentioned below *as it shall consign to said agent to be delivered at Elizabeth City."*

Item one of the contract says: "Swift & Company, Inc., agrees to pay agents as commissions for services mentioned," etc.

Item two says: "Agent accepts this appointment and agrees to push the sale of Swift's Fertilizer," etc.

Item three says: "Agent agrees to make full settlement to Swift & Company, at Baltimore Md., on 1 April, 1917, for all sales, with cash for all cash sales, and with purchaser's notes for all time sales. Purchaser's notes to be endorsed by agent, and to bear interest at 6 per cent per annum from maturity; . . . purchasers' notes to be made on blanks to be furnished by Swift & Company, Inc." "Agent further agrees to send to Swift & Company, Inc., Baltimore, Md., on 1 April, 1917, *a list of fertilizer remaining on hand and not sold on that date."*

Item four says: "Agent shall keep a separate record of sales, payments, note transactions, and stock on hand for Swift & Company, Inc., which they may examine on demand. *All unsold fertilizer shall continue to be owned by Swift & Company, Inc., subject to its order. On demand of Swift & Company, Inc., it shall be delivered by agent at station named, subject to Swift & Company's orders, free from liens, charges, or expenses, and in good order. Agent shall store all goods separate and apart from other goods, and in a suitable building."*

Item five says: *"Agent shall have no liens,"* etc.

From the above it is clear that the New Bern Produce Company was merely agent of the plaintiff. As the defendant company was merely the agent of the plaintiff, to whom the fertilizer belonged, the defendant cannot recover any loss of fertilizer caused by bad sewing. The title of the fertilizer was in the plaintiff, and the defendant could return to the plaintiff any part of the fertilizer which it did not sell. The judge approved the referee's finding of fact that the bags were not properly sewed, and that as much as ten per cent of the fertilizer was thus shipped and wasted, before delivery. But it was also found that the defendant received full price without any abatement to the purchaser by reason of any wastage, though the referee allowed certain other demands for recoupment to the defendant.

Item ten of the contract provides: "All claims of whatever nature must be made within ten days of the receipt of the fertilizer or they will not be recognized." The defendant was notified to make claim for any losses, which would be adjusted, but made none until after this suit was brought, and have paid out nothing. They are not entitled to recover on the counterclaim, not only because they filed no claim for losses, as

required by contract, but because they have not suffered any loss. *Hubbard v. Godwin,* 175 N. C., 174. The court properly sustained the refusal of the referee to allow the counterclaim for wastage.

Affirmed.