FRANK A. DALY *vs.* CHAPMAN MANUFACTURING COMPANY.

Middlesex.   November 15, 1922. — July 6, 1923.

Present: RUGG, C.J., DeCOURCY, CROSBY, & CARROLL, JJ.

*Contract*, Construction, Performance and breach.   *Words*, " Delivered,"
" Net profits."

If, after a manufacturer has made partial deliveries in compliance with an
order for a large number of certain manufactured articles, the customer
without fault of the manufacturer cancels the order and no further deliveries
are made, the manufacturer, under an agreement to pay an employee a
commission " for each and all of the " articles " delivered by the " manu-
facturer " on this order," is liable to pay a commission only on the articles
actually delivered, although, upon a claim for damages resulting from the
cancellation of the order, the manufacturer receives by compromise from
the customer as much money as if the orders had been carried out and all
the articles ordered had been delivered and paid for.

A manufacturing corporation made with its general manager an agreement to
pay him, in addition to a certain fixed salary, "a sum equivalent to five per
cent of the net profits of the " corporation " after there has been deducted
a sum equivalent to seven per cent per annum on the outstanding preferred
stock, and six per cent per annum on the outstanding common stock of the
company.   This bonus of five per cent is to be paid you either semi-annually
or annually, as the profits of the company may be determined, during the
period of your employment with the " corporation.   In 1918, a customer,
who had given the corporation a large order which promised large profits,
cancelled the order.   In 1919 the corporation made a claim for damages
resulting from the cancellation which was compromised by the payment to
the manufacturer of as much money as the manufacturer would have
received if the orders had been carried out and the manufactured articles
had been delivered and paid for.   The manufacturer, however, operated
at a loss in 1919 and 1920.   In an action by the general manager for a bonus
alleged to be due on the basis of the 1918 profits, it was *held,* that

(1) The assets of the corporation at the end of the year 1918 included
the claim for damages resulting from the customer's cancellation of the order;

(2) The plaintiff should have been permitted to show that, if the amount
received in 1919 in settlement of that claim were taken into account, there
would have been in 1918 net profits of the corporation in excess of the
stated percentages on the preferred and the common stock;

(3) In order to determine the value of that claim at the end of 1918,
any evidence materially tending to show that such value was less, or,
conversely, was more than the amount collected on it in 1919, was admis-
sible; and the amount actually collected in 1919 also was of evidential
weight.

CONTRACT, with a declaration in seven counts, for a bonus and a commission alleged by the plaintiff to be due him under the provisions of agreements made with him by the defendant while he was acting as its general manager. Writ dated June 21, 1920.

In the fourth count, the plaintiff sought to recover $5,494.60, relying on a contract made in the following letters:

The plaintiff to the defendant on October 2, 1918: " As a result of our conversation of today, superseding the arrangement as expressed in my letter of September 16th and your confirmation of September 23d, it is now agreed and understood that in recognition and consideration of the value of my special services to the Chapman Mfg. Co. in securing from the American Can Co. its order # 385½ for 1,250,000 Mark III Adapters for 75 m/m High Explosive Shells at 18¢ each, I am to receive ½ cent for each and all of the Adapters on this contract. If you will be good enough to confirm this I will be greatly obliged."

The defendant to the plaintiff on October 4, 1918: " This will confirm the agreement outlined in your letter of October 2d, and our conference of the same date; and it is understood that in recognition and consideration of the value of your special services to the Chapman Manufacturing Company, in securing from the American Can Company its order # 385½, for 1,250,000 Mark III Adapters at 18¢, you are to receive ½ cent for each and all of the Adapters delivered by the Chapman Manufacturing Company on this order."

In the seventh count, the plaintiff, in reliance upon the letter of September 17, 1917, quoted in the opinion, sought to recover $2,505.40 as a bonus. All other counts in the declaration were waived.

The action was heard by *Irwin*, J., without a jury. Material evidence is described in the opinion. At the close of the plaintiff's evidence, on motion by the defendant, the judge ruled " that as a matter of law on the case stated in the declaration and the testimony offered in support thereof, the action could not be maintained," ordered " that a finding be entered for the defendant as a matter of law on both counts, and by agreement of the parties " reported the case to this

court for determination. " 'With respect to the fourth count, if the court erred judgment is to be entered for the plaintiff on the fourth count in the declaration in the sum of $5,494.60. With respect to the seventh count, if the court erred in its decision as to the rights of the parties under the seventh count in the declaration, then the issue on that count shall stand for hearing in the Superior Court."

*P. Nichols,* for the plaintiff.

*F. W. Bacon,* for the defendant.

CROSBY, J.     This is an action of contract.     It was heard by a judge of the Superior Court on the fourth and seventh counts of the declaration.     The other counts were waived. The case is before us on a report in which it is recited that " The plaintiff offered testimony tending to establish and which, if believed, would establish the following facts."

The defendant is a manufacturing corporation; and the plaintiff was its general manager from June until September, 1917, under an oral contract of employment, and from September 17, 1917, under the following written agreement:

> " Chapman Manufacturing Company
> 185 Devonshire Street,
> Boston.
>
> September 17, 1917.

Mr. Frank A. Daly,

Winchester, Mass.

Dear Sir: —

Confirming our verbal arrangement, we are pleased to make the following agreement with you for your services:

It is mutually understood and agreed between you and the Chapman Manufacturing Company that you will devote all of your time, thought and energy to the business of the Chapman Manufacturing Company in the position of General Manager, for the period of three years from July 1, 1917.

In consideration of the foregoing, you are to be paid by the Chapman Manufacturing Company a salary of $6,000 per annum, payable $500 monthly, from July 1, 1917.

It is also mutually understood and agreed that you are to receive for your services, in addition to the foregoing salary,

a sum equivalent to five per cent. (5%) of the net profits of the Chapman Manufacturing Company after there has been deducted a sum equivalent to 7% per annum on the outstanding Preferred stock, and 6% per annum on the outstanding Common stock, of the Company. This bonus of 5% is to be paid you either semi-annually or annually, as the profits of the Company may be determined, during the period of your employment with the Chapman Manufacturing Company.

Very truly yours,

Chapman Manufacturing Co.

[signed] F. R. Switzer,

President.

Accepted:

Frank A. Daly."

The defendant was " organized for the purpose of manufacturing spindles for use in cotton mills and other like articles. Its factory was located at Winchester, Massachusetts, and contained considerable machinery and a forge. Plaintiff's duties consisted of personal supervision and control of the manufacturing of the product and general control of the selling; the actual selling was not to be performed by him as part of his duties as general manager but by salesmen under his direction."

The business of manufacturing spindles suffered some reverses and delays because the spindle had not been perfected; and " Within a week after he had taken charge plaintiff stopped all manufacture and dismissed the salesmen, . . . and spent several months in perfecting the spindle and getting out new designs, new tools and new equipment and in securing a patent on what he had devised."

In the spring of 1918, however, the plaintiff secured in New York an order from the American Can Company for the manufacture of five hundred thousand adapters for high explosive shells, which the latter company was making for the United States at a price of fifteen cents each. It was ascertained by the plaintiff that the " adapters could be built with machinery which would be of service to the defendant after the war was over in the manufacture of its regular product; " and the defendant at once took steps to fill this order.

In September, 1918, while the defendant was at work making the adapters under the contract, the plaintiff believed that he might be able to get an additional order for a million adapters from the can company at a price of eighteen cents each, and that the company would agree to pay eighteen cents for all or a part of the adapters thereafter delivered under the existing contract.   The plaintiff laid these facts before the defendant's president, one Switzer, who agreed in writing on behalf of the defendant that if the plaintiff secured such a contract, he might retain the three cents to be received for each adapter under the original contract. The plaintiff thereafter went to New York and secured a contract between the can company and the defendant for one million two hundred and fifty thousand adapters at eighteen cents each, but without any provision for additional compensation on the adapters to be delivered under the first contract.   This order " was more advantageous to the defendant than the anticipated order referred to in the correspondence between the plaintiff and Switzer and was accepted by Switzer as a satisfactory substituted performance by the plaintiff of the condition of his agreement with the defendant."   And Switzer agreed in writing on behalf of the defendant that, in recognition and consideration of the value of the plaintiff's special services in securing the order, he was to receive one half cent on each adapter delivered under the order;   this was assented to by the plaintiff in writing.

The defendant proceeded to carry out the order, but the war having come to an end, the American Can Company on December 17, 1918, cancelled its contracts with the defendant and work thereon was stopped at the defendant's plant.   One hundred fifty-one thousand and eighty adapters had then been delivered under the second contract.   In January, 1919, $755.40 as commissions thereon was paid to the plaintiff by the assistant treasurer of the defendant, at the plaintiff's request and with the president's approval. The chief accountant entered this payment in the company's books.

In 1919 the defendant made a claim against the American

Can Company for damages for the breach of the two contracts. Only the amount due was disputed by the can company. In 1920 the claim was compromised by payments to the defendant, as a result of which the defendant "received as much money on these particular contracts as if the contracts had been carried out and all the adapters delivered and paid for. After the cancellation of the contracts, however, the defendant attempted to retain the nucleus of its organization and to secure business, without success, and operated at a loss in 1919 and 1920 and this loss was not returned to the defendant except so far as it was covered by the settlement."

Just after the last payment on the settlement, the plaintiff demanded $5,494.60 as the balance of his commissions on the second contract. This action is to recover that sum, and also an additional $2,505.40 claimed to be due under his general contract of employment as five per cent of the net profits for 1918.

As bearing upon this latter claim, the plaintiff offered to prove " That if the amounts received by the defendant subsequent to 1918 in satisfaction and settlement for the cancellation of contracts entered into in 1918 and cancelled in 1918 are considered in determining the net profits of the defendant for the year 1918, the net profits of the defendant for the year 1918, after deducting a sum equivalent to 7% per annum on the outstanding preferred stock of the company and 6% on the outstanding common stock of the company and the commission claimed by the plaintiff in this case, amounted to not less than $50,108." This evidence was rejected subject to the plaintiff's exception. The court also ruled that as matter of law, upon the case stated in the declaration and the testimony offered in support of it, the action could not be maintained.

The claim for commissions is based upon the special contract set forth in the letters of October 2 and 4, 1918, and marked " A," whereby the defendant agreed to pay the plaintiff one half cent for each adapter delivered by the defendant to the American Can Company. The report of the presiding judge recites that " At the close of the plaintiff's

evidence the defendant made a motion that I should rule that as matter of law on the case stated in the declaration and the testmony offered in support thereof, the action could not be maintained." It thus appears that the right of the plaintiff to recover commissions under the fourth count was limited to commissions on adapters delivered by the defendant to the can company: the contract embodied in the letter of October 4 expressly so provides and such deliveries must be held to have been contemplated by the parties to entitle the plaintiff to commissions. The word " delivered " must be construed in accordance with its usual and ordinary meaning. In this connection it implies an actual physical passing and transfer of the adapters from the defendant to the can company under the contract. *Lafferty* v. *Lorimer*, 86 Mich. 591. *Swift & Co.* v. *New Bern Produce Co.* 180 N. C. 27. When the can company cancelled its contract with the defendant, it had delivered one hundred and fifty-one thousand and eighty adapters and had received payment therefor, and the defendant paid the plaintiff $755.40, the commissions due the latter on such deliveries. The fact that all the adapters contracted for by the can company were not delivered was not due to any fault of the defendant. As the defendant has paid the plaintiff commissions on all adapters so delivered, the ruling of the court that there could be no recovery upon the fourth count was correct; judgment for the defendant is to be entered on that count.

The cases cited by the plaintiff relating to the right to recover a commission by a broker who secures a customer to make a valid agreement with the owner for the purchase of land, which agreement is not carried out through no fault of the broker, have no application to the contract in the case at bar. *Walker* v. *Russell*, 240 Mass. 386, and cases cited.

The contention of the plaintiff that to hold he is not entitled to recover will work an injustice is not tenable. The ruling is manifestly in accordance with the proper construction of the contract which the parties saw fit to make. In view of the conclusion reached upon the claim for commissions, we need not consider whether the president of the

defendant corporation was authorized to make the contract in question, or whether it was without consideration.

As to the seventh count: the method of " ascertaining the net profits " for a given period under a contract such as this has been clearly defined with reference to the beginning and end of the period as involving " a comparison between the assets of the defendant on these dates. . . . In order to ascertain what the difference is between the assets on these two dates, a valuation of approximate correctness ought to be made as of the several material dates." *Stein* v. *Strathmore Worsted Mills,* 221 Mass. 86, 89, 93. It is plain that the assets at the end of the year 1918 included the claim for damages against the American Can Company. " A valuation of approximate correctness " of this claim was an element in the net profits upon which, after deducting certain dividend requirements, the plaintiff was entitled to a commission. The offer of proof should not have been rejected.

While the cancellation of the contract by the can company throws the whole gain of this munitions contract into the year 1918 by altering the prospect of future profits into a claim immediately due and payable, yet the plaintiff's contract of employment comprehended that contingency. " The natural inference from the contract is that the plaintiff as selling agent would find his good judgment and skill in this department reflected in the profits, on which his percentage would be based; while the defendant would see the activity and efficiency of the plaintiff due to this incentive, resulting in increased sales." *Stein* v. *Strathmore Worsted Mills,* 221 Mass. 86, 92. But it is also true that the result of a business year may turn upon some commercial contingency which the plaintiff's skill and diligence could neither cause nor prevent. Both are contemplated by the contract. But any evidence materially tending to show that the value of the claim was less at the end of 1918 than the amount actually collected on it, may be introduced. Compare *Park* v. *Grant Locomotive Works,* 13 Stew. 114. Conversely the plaintiff may show if he can that it was worth more. And the amount of the actual collection is also of evidential

weight. Compare *Hellen* v. *Medford,* 188 Mass. 42. Furthermore, it will be noted that the payments are to be " either semi-annually or annually, as the profits of the Company may be determined." It will be proper to inquire, if desired, which method was actually taken as fixing the terminal date of each computation period.

The seventh count is therefore, in accordance with the report, to stand for hearing in the Superior Court.

. *Ordered accordingly.*