GEORGE B. HARRIS & others *vs.* NATIONAL SURETY COMPANY.

Suffolk.   November 29, 1926. — January 24, 1927.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & SANDERSON, JJ.

*Insurance,* Fidelity.   *Contract,* Construction.   *Words,* "Trading."

Under the provisions of a bond of fidelity insurance issued to a firm of stockbrokers, the insurer agreed to indemnify the brokers and to hold them harmless from loss sustained through any dishonest act of any employee, wherever committed and whether committed directly or by

collusion with others. The bond contained the following provision: "This bond does not cover loss directly or indirectly from trading, actual or fictitious, whether in the name of the Insured or otherwise, and whether or not within the knowledge of the Insured, and notwithstanding any act or omission on the part of any employee in connection therewith, or with any account recording the same." *Held*, that the insurer was not liable by reason of loss caused to the brokers through an employee's opening an account upon the broker's books for himself but under a fictitious name, concealing the account from the brokers until it showed a large unsecured indebtedness to the brokers, and then deceiving the brokers into thinking that the owner of the account was financially reliable.

The word "trading" as used in the bond above described applied to the transactions carried on by the employee under the fictitious name, and related to the business of the plaintiffs with customers and was not limited to trading for the firm by an employee known as a "trader" and called the "stock and bond trader."

CONTRACT upon a bond of fidelity insurance given to the plaintiffs doing business under the firm name and style of Blake Brothers and Company. Writ dated February 14, 1925.

In the Superior Court, the action was heard by *Broadhurst*, J., without a jury. Material evidence and findings by the judge are described in the opinion. The judge, at the request of the defendant and subject to exceptions by the plaintiff, ruled as follows:

"5. If the account of Susan M. Collins with the plaintiff was the account of Jacobs, who was buying and selling stocks through the plaintiffs in the name of Susan M. Collins, the defendants are not liable.

"6. The defendants are not liable upon the bond for any loss to the plaintiffs by reason of statements made by Jacobs concerning the account in the name of Susan M. Collins even though the statements were false and dishonest."

The plaintiffs asked for and, subject to their exception, the judge refused to give the following rulings:

"1. On all the evidence the plaintiffs are entitled to judgment for the amount claimed.

"2. If Jacobs concealed from the plaintiffs and from their agent charged with the supervision of margin accounts the fact that the account in question was insufficiently secured and when the fact was discovered induced the plaintiffs by

false representations to continue to carry the account the plaintiffs are entitled to recover in this action.

"3. In so far as the plaintiffs suffered loss from the concealment by Jacobs of the fact that the account had become insufficiently secured the loss is covered by the bond sued on.

"4. In so far as the plaintiffs suffered loss as a result of their being led by Jacobs to believe that the account was in reality that of Mrs. Collins and that she was financially able to take care of it the loss is covered by the bond sued on.

"5. If the account in question became or remained insufficiently secured because of concealment or false representations by Jacobs any loss resulting therefrom is a loss caused by a 'dishonest act' of Jacobs, within the meaning of the policy, for which the plaintiffs are entitled to recover.

"6. If Jacobs concealed from the plaintiffs and their margin clerk the fact that the account became insufficiently secured and if when that fact came to their attention he induced them to permit its continuance by representing that Mrs. Collins was a woman of property and was responsible for the account and would take care of the indebtedness the plaintiffs are entitled to recover their loss.

"7. The loss in question in this case is not a loss resulting directly or indirectly from trading within the meaning of the last paragraph of the bond."

The judge found for the defendant. The plaintiffs alleged exceptions.

*R. G. Dodge,* (*L. Curtis, 2d,* with him,) for the plaintiffs.

*J. E. McConnell,* for the defendant.

CROSBY, J. This action of contract to recover on a bond of fidelity insurance was heard by a judge of the Superior Court, who found for the defendant. By the terms of the bond, the defendant agreed to indemnify the plaintiffs and to hold them harmless from loss sustained through any dishonest act of any employee, wherever committed and whether committed directly or by collusion with others. The agreement of the defendant embodied in the bond was subject to certain conditions and limitations, the thirteenth being as follows: "This bond does not cover loss directly or indirectly from trading, actual or fictitious, whether in the

name of the Insured or otherwise, and whether or not within the knowledge of the Insured, and notwithstanding any act or omission on the part of any employee in connection therewith, or with any account recording the same." The trial judge made the following and other findings: The plaintiffs, as copartners, are engaged in the business of banking and dealing in stocks, bonds and other securities, both on their own account and as brokers for others. They applied for, and the defendant issued to them on September 25, 1919, the bond of indemnity upon which this suit is brought. The bond has remained in force since it was issued, by riders attached annually, without material change except so far as affected by the rider of June 8, 1922.

The plaintiffs contend that they are entitled to be indemnified by virtue of the bond in the sum of $6,975.19, a loss sustained by them through the dishonesty of one Jacobs, who was in their employ as cashier in their Boston office from February 1, 1915, until November 11, 1924. His duties included the handling of office cash, securities, customers' collateral, loans, transfers and similar matters. June 18, 1919, he caused to be opened on the books of the plaintiffs a margin account for the purchase and sale of stocks in the name of Susan M. Collins. Customers' accounts, whether margin or cash, were kept by the firm's bookkeepers on loose-leaf cards. From these cards a monthly statement was made showing the securities bought or sold, the price paid or received, the name and value of collateral, the commission charged, and the balance due from the customer with interest thereon. This statement was mailed monthly by a clerk in the bookkeeping department to each customer, except in a few instances which need not be described. The monthly statements of the condition of the Collins account were, at Jacobs's request, given to him by an employee instead of being mailed to her. This was done during the entire existence of the account.

It was the general practice of the plaintiffs, known to Jacobs, to execute only such orders for buying or selling stocks as were given by a customer himself, unless the customer filed with the plaintiffs written authority to a desig-

nated person to enter such orders for him. If Mrs. Collins ever gave Jacobs written authority to enter orders for her, he concealed it from the plaintiffs.

One Greenough was employed by the plaintiffs as "customers' man," and as a margin clerk he had charge of customers' accounts and caused statements to be sent monthly to customers showing the condition of the account and the amount of margin thereon. Jacobs by reason of his position was able to and did obtain possession of all the monthly statements of condition and margin slips relating to the Collins account, and thus concealed from Greenough and the plaintiffs until September, 1922, the fact that the Collins account was insufficiently secured. Early in that month the plaintiffs discovered that the securities carried in the Collins account were worth at the then market prices $3,729.20 less than the customer's debt to the firm.

Shortly before this, one of the plaintiffs, Dodge, learned that Jacobs was giving orders on the Collins account. Because of Jacobs's manipulation of this account, neither Dodge nor Greenough knew its condition before September, 1922. None of the other plaintiffs knew of its existence until November, 1924. As soon as Dodge learned that there was a shortage in the account, he spoke to Jacobs about it, and the latter told him that the deficit was largely due to unfortunate investments he had made. For that reason and also because Dodge relied on Jacobs's statements that Mrs. Collins was his mother-in-law and was a woman of means and able to make good any loss, Dodge consented to have the account continued. Jacobs's statements respecting Mrs. Collins's financial standing were false, as he knew, and were made to induce Dodge to let the account remain in order to give Jacobs a chance "to work it out without loss."

The plaintiffs did not notify the defendant in September, 1922, or thereafter, of the fact that the Collins account showed a loss at that time or that they had decided to continue it. No one on behalf of the plaintiffs made any inquiry about Mrs. Collins or any effort to verify Jacobs's statements concerning her.

After September, 1922, until the account was closed, Dodge

and Greenough together or separately (Greenough acting alone at times with Dodge's consent) directed purchases and sales of stock on the Collins account, orders being executed either by Jacobs, under their instructions, or by themselves. During this period the margin slips showed the condition of the account and came regularly to the notice of Greenough and Dodge. The monthly statements to be sent to the customers continued to remain in Jacobs's hands. Dodge and the other plaintiffs did not know until November, 1924, that these statements were not being sent to Mrs. Collins. "From September, 1922, until the account was closed Dodge knew everything material to be known concerning it except the identity of its owner and the financial standing of Mrs. Collins."

November 11, 1924, it was discovered by the plaintiffs that Jacobs had misappropriated stock belonging to the plaintiffs, not carried in the Collins account, the value of which has been paid by the defendant to the plaintiffs. This discovery led the plaintiffs to make more particular inquiry of Jacobs and Mrs. Collins as to the ownership of the account. The judge found, upon all the evidence, that Jacobs, and not Mrs. Collins, was the real owner of the account, but that the plaintiffs did not learn that fact until November, 1924; that the account was closed on November 24, 1924, by a sale of all the securities then being carried at a loss of $6,975.19; that due notice of the loss and adequate proofs thereof were seasonably given to the defendant as required by the bond; and that the plaintiffs are entitled to recover unless the defendant is exonerated by the conduct of the plaintiffs and the terms of the bond.

It is the contention of the defendant that it is not liable because the loss arose from "trading" as that term is used in the thirteenth paragraph of the conditions and limitations of liability. It is the contention of the plaintiffs that the word "trading," applied to the business of the plaintiffs, as used in paragraph thirteen, means only the buying and selling of securities by a broker on his own account, as distinguished from such transactions on behalf of customers.

The judge found that the word "trading," as used in the

bond, did not have the restricted meaning for which the plaintiffs contend, but the same meaning it has in any mercantile business, namely, the "buying and selling of commodities," in the case at bar the buying and selling of securities whether for cash or on margin. He further found and ruled that the plaintiffs' loss was occasioned by trading by Jacobs or by Dodge and Greenough or by all three on the Collins account, and that the defendant was not liable for such loss notwithstanding Jacobs was dishonest in concealing from the plaintiffs before September, 1922, the fact that the account was insufficiently secured, and in deceiving the plaintiffs after that time as to the real owner of the account, and as to Mrs. Collins's financial standing.

Although the plaintiffs introduced evidence tending to show that the word "trading" by custom and trade usage had a special and restricted meaning, there was other evidence to the contrary, and the judge found and ruled that it is to be construed in its usual and ordinary sense. As the language of the bond is free from ambiguity, it is to be given its plain and customary meaning. *Rome* v. *Gaunt*, 246 Mass. 82, 93. *Daly* v. *Chapman Manuf. Co.* 246 Mass. 118, 124. *Guarantee Co. of North America* v. *Mechanics' Savings Bank & Trust Co.* 183 U. S. 402.

The word "trader" is defined as one who is engaged in trade or commerce or one who buys and sells goods or merchandise for gain. See *First National Bank of Wilkes Barre* v. *Wyoming Valley Ice Co.* 136 Fed. Rep. 466, 467. So construed it is clear that the ruling of the judge, that the word "trading" applied to the transactions involved in the Collins account and related to the business of the plaintiffs with customers and was not limited to trading for the firm by an employee known as a "trader" and called the "stock and bond trader," was correct.

Upon the findings, it is manifest that the plaintiffs are not entitled to recover for losses sustained before or after September, 1922. The plaintiffs' exceptions to the failure of the trial judge to give their first, second, third, fourth, fifth, sixth and seventh requests were rightly denied, in view of the findings made by him. The exceptions to the giving of

the defendant's fifth and sixth requests cannot be sustained. The exceptions to the giving of the other requests of the defendant are not argued and we treat them as waived.

As the plaintiffs are precluded from recovery for the reasons stated, it is unnecessary to consider further grounds of defence relied on by the defendant.

*Exceptions overruled.*