28

EDITH KANE, Assignee of J. S. GISSEL, Doing Business as COLLIN & GISSEL, Plaintiff, *v.* NEPTUNE SHIPPING, LTDA., Defendant.

First Department, June 7, 1948.

*George A. Spiegelberg* of counsel (*Philip B. Wershil* with him on the brief; *Riegelman, Strasser, Schwartz & Spiegelberg,* attorneys), for plaintiff.

*David L. Corbin* of counsel (*Thomas K. Roche* with him on the brief; *Haight, Griffin, Deming & Gardner,* attorneys), for defendant.

SHIENTAG, J. The action is one for broker's commissions claimed to have been earned in procuring a charter party. According to the agreed statement of facts, J. S. Gissel, plaintiff's assignor, is a ship broker doing business under the name of Collin & Gissel in Houston, Texas. Defendant Neptune Shipping, Ltda., S. A. (hereinafter called "Neptune") was the time-chartered owner of a Norwegian tanker named the *Mosli*. On October 5, 1938, at Oslo, Norway, a charter party was entered into between defendant and Eastern States Petroleum Sales Corporation (hereinafter called "Eastern States") as charterer for a term of twelve months to commence from the date of delivery of the vessel to the charterer. Payment of the hire was to be made in cash monthly in advance in New York; in default of such payment "the Owners shall have the faculty of withdrawing the said vessel from the service of the Charterers without prejudice to any claim they (the Owners) may otherwise have on the Charterers in pursuance of this Charter." Apparently by inadvertence the charter party made no reference to commissions to be paid to the broker. However, defendant agreed by letter to pay Gissel 3½% brokerage commission on the hire to be earned under the Oslo charter.

On November 5, 1938, pursuant to authority granted by clause 20 of the Oslo charter, the charterer, Eastern States, entered into a subcharter agreement, known as the Houston charter, with Distribuidora de Petroleos Mexicanos (hereinafter called "Distribuidora"). This subcharter was for twelve months from the date of delivery of the vessel (exactly the same term as the Oslo charter) and it provided for a 10% higher rate. Concededly, Gissel, the broker, did not arrange the Houston charter and no commission was to be paid under it. The vessel was delivered to the charterer under the Oslo charter on November 28, 1938, and "was thereafter delivered on the same day to Distribuidora ° ° ° the Charterer under the Houston Charter."

The charterer was dilatory in making the monthly payments to the defendant for the first six months' hire but the defendant paid the first three months commission due to plaintiff's assignor on March 15, 1939, and on May 13, 1939, fifteen days prior to the end of the second three months period, paid plaintiff's assignor commissions for the period ending May 28, 1939. The first payment of hire under the Oslo charter was due November 28, 1938, and was paid on that date. The second month's hire was not paid until January 4, 1938, after demand. The third month's hire was not paid until February 6, 1939, after demand. The

fourth month's hire was not paid until the end of March in spite of threats of withdrawing the vessel. The fifth month's hire was not paid when the six month's hire became due.

Shortly prior to May 20, 1939, defendant had notified the charterer that it would withdraw the *Mosli* from service because of the charterer's failure to make timely hire payments as required by the Oslo charter. On May 20, 1939, defendant and the charterer, in good faith without the knowledge or consent of the ship broker, entered into a written agreement pursuant to which the charterer assigned all of its right, title and interest in the Houston charter to the defendant " with the same force and effect as if the said motortank ship Mosli had been originally time-chartered by its time-chartered owner, Neptune Shipping Ltda., S. A. to Distribuidora * * *."

Eastern States guaranteed to defendant the due and faithful performance by Distribuidora of the Houston charter party " in each and every respect and with the same force and effect as if Eastern States Petroleum Co., Inc., were the time charterer under the charter party dated at Houston, Texas, November 5, 1938 "; and in the event of any default undertook to remain fully responsible therefor and in addition to pay defendant all expenses including legal fees incurred in connection with the prosecution by defendant of any claims. Eastern States warranted and represented that there were no commissions payable under the Houston charter dated November 5, 1938. There was an assignment by Eastern States of certain contracts and bills of lading for the faithful performance by Distribuidora of the Houston charter party, and certain warehouse receipts were left in escrow until charter fees for May 28th and June 28th had been paid. Finally, the assignment provided as follows: " The time charter dated at Oslo, Norway, October 5, 1938, between Neptune Shipping Ltda. S. A., as time-chartered owner of the motortank ship Mosli, and Eastern States Petroleum Co., Inc., as time charterer, is hereby cancelled, the intent of this agreement being that the time charter dated at Houston, Texas, November 5, 1938, between Eastern States Petroleum Co., Inc., as sub-time chartered owner and Distribuidora de Petroleos Mexicanos is in all respects to replace and substitute for the time charter dated at Oslo, Norway, October 5, 1938."

It is conceded herein that the purposes of the parties in entering into the agreement of May 20, 1939, " were entirely without reference to the question of the right of plaintiff's assignor to receive commissions for services rendered as broker in arranging the Oslo Charter." As has been stated defendant sent to

Gissel brokerage commissions for February to May. After that, no further brokerage was paid although Distribuidora performed its contract in full. Judgment for brokerage commissions is claimed on the earnings of the steamer for the seventh to twelfth months of the hire. No. question is raised as to the amount of the commissions if any are due.

No case on the precise facts herein presented has been drawn to our attention. The cases raise problems more or less analogous and hence indicate a fairly definite line of approach. Examination of the decisions in which the broker failed to recover as well as those in which a recovery was allowed will show the elements necessary to establish a cause of action under the present circumstances.

In *Hirschfeld* v. *Jamaica Savings Bank* (257 App. Div. 991), a broker was awarded commissions on the amount of a settlement reached after the successful prosecution of a suit for specific performance. The trial court found that the defendant had obtained by law a performance of the contract. In *Amies* v. *Wesnofske* (255 N. Y. 156), the court found a default by the broker's customer and held that the condition for recovery, namely " the closing of title ", did not take place, even though the seller retained the down payment. The conclusion was stated as follows (p. 165): " True, the parties entered into a new agreement whereby the vendors were to retain the $10,000 previously paid and the vendees were to be released from their contract obligations. However, the vendors received from the agreement no right or thing which the law had not already given them, viz., the sum of $10,000 and the right to retain it. The defendants, therefore, neither prevented nor hindered performance. Non-performance was already, without their aid, an established fact. Passive acquiescence in a declared default and its consequences was not an act of prevention or hindrance. Neither did the defendants receive an additional advantage, bargained for in lieu of non-performance. Consequently a case of waiver was not made out. The condition upon which payment was made to depend, not having been performed or waived, no recovery may be had."

In *Amies* v. *Wesnofske* (255 N. Y. 156, *supra*), the court refers to and indicates its approval of two New Jersey cases: *Haber* v. *Goldberg* (92 N. J. L. 367), and *Dermody* v. *New Jersey Realties, Inc.* (101 N. J. L. 334) where, recoveries were allowed the brokers. In the first case it appeared that the seller had recovered substantial damages from the defaulting buyer; in the second case the seller retained a down

payment and made a settlement for substantial damages. The Court of Appeals (p. 164) commented on these cases, saying: " In each case, the vendor made use of the contract, secured for him by his broker, to obtain an advantage from the defaulting vendee. Although he did not secure actual performance of the contract, he received, in the one case, an award representing the benefit lost; in the other, an agreed payment which presumably measured it with approximate accuracy. It might well have been reasoned that the precise equivalent of performance was received in each case; therefore, that the condition had in effect been performed."

Further aid in reaching a conclusion in this case is given by a line of decisions represented by *MacDowell-Peterman Co. Inc.*, v. *Independent Packing Co.* (211 App. Div. 781), and *Loughced & Co., Ltd.*, v. *Suzuki* (216 App. Div. 487, affd. 243 N. Y. 648). In the first case the broker was refused recovery of commissions where there had been a default and some recovery. The court said (p. 791) : " It is finally the claim of the appellant that it is entitled to commissions on $292,965.32, said amount being made up of the cash margin of $25,000 paid by Mogensen, of the proceeds on the $92,000 note, and of $16,676.11 representing the purchase price of the two cars of pork actually shipped by the defendant. I think there is no force in the appellant's position in this respect. The defendant lost over $200,000 in the whole transaction. None of the payments upon which the plaintiff asks commissions were procured by the plaintiff. If plaintiff's argument were sound, then if Mogensen had abandoned his contract at the end of July, 1919, and the defendant had been forced to sell the entire 3,000 boxes of meat at a loss, plaintiff would have been entitled to commissions, not on the contract price of the meat, but on the amount realized at the sale. Such a proposition seems quite absurd." In short where there was a net loss to the principal, the broker could not recover. In the *Loughced* case the broker was to receive monthly payments, and when the charter party was cancelled through causes beyond the principal's control, this court held that the brokerage was not earned. Here again the principal was not made whole.

Finally, we have to consider two cases which suggest a sound basis of decision in the case before us. In *Caldwell Co., Inc.*, v. *Connecticut Mills Co.* (225 App. Div. 270, affd. 251 N. Y. 565), the plaintiff, exclusive sales agent of defendant, negotiated a contract with a third party who defaulted. A large sum was paid as damages and the broker demanded its commission. The court held that under the terms of the exclusive sales agency agree-

ment between the plaintiff and the defendant, the defendant had the right to cancel the contract procured by the plaintiff; that having done so honestly and without any purpose to defraud the plaintiff of its commissions, the plaintiff's right to commissions thereafter, under the agreement, ceased; and that it did not have the right to recover commissions upon the purchase price of merchandise which defendant would have had to deliver to yield a profit equivalent to the amount received by the defendant as damages for the breach of the contract.

At first glance this would seem to lead to a judgment for defendant in our submitted controversy, but an examination of the reasoning in the case shows that it is not at variance with the implications of the other decisions already discussed. The court squarely held that the settlement did not make the defendant whole, saying (*supra,* pp. 274–275) " This conforms with what the evidence in this case discloses, that the receipt of legal damages for the breach of a manufacturing contract under circumstances such as here exist falls short of making the manufacturer whole. The most important item of difference between the estimate of damage made by the defendant and that made by the Fisk Rubber Company was substantially undisputed. It was shown that if the contract had been fulfilled by the Fisk Rubber Company, the defendant would have saved the sum of $195,101.56 in the amount of overhead expense applicable to the production of the remainder of its plant. This item was not allowed in the settlement. Actual injustice would here result from resting a decision upon a general impression of what may on the surface appear to be equitable rather than upon the considered agreement of the parties themselves."

In the *Caldwell* case this court discussed at length the Massachusetts case of *Daly* v. *Chapman Mfg. Co.* (246 Mass. 118). There, a manufacturer made partial deliveries in compliance with an order for a large number of certain manufactured articles. The customer without the fault of the manufacturer canceled the order and no further deliveries were made. The manufacturer had agreed to pay an employee a commission for each and all of the articles delivered by the manufacturer " on this order." The court held that the manufacturer was liable to pay a commission only on the articles actually delivered, although, upon a claim for damages resulting from the cancellation of the order, the manufacturer received by compromise from the customer as much money as if the orders had been carried out and all the articles ordered had been delivered and paid for.

Here again we find the court searching to determine whether defendant was actually made whole. The court did not find that the settlement was equivalent to performance. For a going concern to receive damages is not the same as receiving due performance or its equivalent. As the court pointed out (246 Mass. 118, 123, *supra*) : " After the cancellation of the contracts, however, the defendant attempted to retain the nucleus of its organization and to secure business, without success, and operated at a loss in 1919 and 1920 and this loss was not returned to the defendant except so far as it was covered by the settlement."

From this review of the precedents, it is clear that in the present case there is no possible claim of any implied or constructive losses such as were found in the *Daly* and *Caldwell* cases. Indeed defendant has received more than it bargained for, and the commission should be deemed earned. Under the agreement of May 20, 1939, the defendant accepted a substituted performance that continued the liability of the original charterer and gave the defendant time-charter owner all of the benefits it could possibly have received under the Oslo charter. Indeed, it received even more than the precise equivalent of performance under the Oslo charter and with increased security.

This opinion thus far has interpreted the facts as given, namely, that by the settlement agreement cancellation of the Oslo charter was effected. If, however, the adjustment of the dispute in this case is considered merely as a modification of the Oslo charter and that the Oslo charter as modified was still in effect, then the plaintiff should recover on the legal theory that performance under a modified agreement is not such a failure of performance as to cause the broker to forfeit his commissions (cf. *Bruner-Goodhue-Cooke-Cranz Agency Co.* v. *Smith*, 25 Ohio App. 21).

Judgment is directed for the plaintiff as prayed for in the submission, with interest and costs.

DORE, J. (dissenting). Plaintiff at law seeks commissions from defendant claimed to be due him under a written contract providing that defendant would pay plaintiff's assignor, as broker, a commission of " 3½% on the hire to be earned under the Oslo Charter * * * ". By reason of defaults on the part of the original charterer, Eastern States Co., the Oslo charter was " cancelled " and a subcharter, the Houston charter, was substituted in all respects for the Oslo charter. The broker had nothing to do with procuring the Houston charter and there was no arrangement to pay commissions to any broker under the provisions of that charter.

No claim is made that the Oslo charter was cancelled in bad faith or in a fraudulent effort to cheat the broker out of his commissions.

On the equivalent performance doctrine, or the receipt by defendant of the amount by which it would have profited by performance of the Oslo charter, it is now said the broker has the right to recover commissions on the hire paid under the Houston charter to the extent of the amount of hire that was provided for in the Oslo charter.

In *Caldwell Co., Inc.*, v. *Connecticut Mills Co.* (225 App. Div. 270, affd. 251 N. Y. 565) the buyer breached the contract and the dispute was settled by a payment of approximately $570,000. This court held that in view of the buyer's breach, the defendant in that case had the right to cancel the contract procured by the plaintiff, and having done so honestly and without the purpose of defrauding the plaintiff of commissions, all right to commissions ceased. The decision of this court in that case was not based on the fact that the sum in settlement was less than might have been received had the contract been fully performed. That reason for recovery was expressly rejected by this court when it said: "It is clear from these authorities that the plaintiff cannot rest upon the proposition that it is entitled to recover merely because the defendant has secured a benefit equivalent to performance of the contract." (P. 278.)

In the present case it is stipulated that the broker did not procure the Houston charter and there was no agreement to pay any brokerage fees thereunder.

In a law action such as this, the broker is restricted to the contract made and the court may not benevolently add to it an equivalent performance clause not contained therein, thereby substantially increasing the rights of one party and the obligations of the other against the terms agreed upon between them.

In the *Caldwell* case, this court rejected both the rule now proposed and the reasoning on which it rests when it said: "We are not concerned, therefore, with any claim of fraud, nor may we predicate a judgment upon any general considerations of what would constitute equitable or generous treatment to the plaintiff. This is an action at law upon a written contract, and that contract is the charter of the plaintiff's rights. It is quite beside the point for plaintiff to urge that inasmuch as the defendant has received the amount by which it would have profited by performance of the agreement, it should in good conscience pay the plaintiff what it would have had to pay him upon performance by the Fisk Rubber Company." (P. 273.) This ruling was affirmed in

the Court of Appeals. We should not now depart from it. By doing so we not only gratuitously increase the rights of this plaintiff and substantially increase the contract obligations of the defendant, but we set a precedent on the basis of which all other claims for commissions, including the frequent claims for real estate brokerage commissions, may be similarly increased beyond the contractual rights and obligations of the parties.

Accordingly, I dissent and vote for judgment in favor of the defendant.

Peck, P. J., Glennon and Van Voorhis, JJ., concur with Shientag, J.; Dore, J., dissents in opinion.

Judgment directed for plaintiff as prayed for in the submission, with interest and costs. Settle order on notice.