Lew Weber, Respondent, v. Simon Askin et al., Appellants.

First Department, June 27, 1963.

*John B. Forrest* of counsel (*Frutkin, Waldie & Rippe*, attorneys), for appellants.

*Daniel D. Trause* of counsel (*Irving Saltzman, Janet Perlman* and *Irving Teplitsky* with him on the brief; *Trause Saltzman, Lesser & Perlman*, attorneys), for respondent.

BOTEIN, P. J. Plaintiff, as broker, negotiated the sale of all stock wholly owned by defendants of a corporation operating a retail chain store business for $1,000,000, payable $600,000 on the date of closing the contract of sale and the balance of $400,000 in 15 equal semiannual installments. Defendants' stock was to be held in escrow as collateral security for any unpaid balance. The sales agreement provided that brokerage commission would be payable to plaintiff as follows:

" (a) If and when the closing takes place, the sum of $18,000.00

" (b) If and when each said semi-annual installment of the balance of the purchase price remaining unpaid at the closing is paid to and received by the Sellers, the sum which shall equal three per cent (3%) of the principal amount of such installment.

" One-half of said brokerage commissions, when and if payable, shall be paid by the Sellers, and one-half thereof shall be paid by the Buyer ".

The buyer made the $600,000 down payment and plaintiff received his commission in the amount of $18,000, of which defendants paid $9,000. The assignee of the buyer through a series of mergers of no significance in this case assumed the obligation to pay and did pay the first two semiannual installments and plaintiff was paid his commissions thereon. This assignee (which will be called the buyer) breached the sale agreement by failing to pay the third installment due September 1, 1962. On September 4, 1962 the buyer filed its petition for arrangement under chapter 11 of the Bankruptcy Act (U. S. Code, tit. 11, ch. 11) and the bankruptcy court enjoined all legal proceedings and stayed the enforcement of all liens against the buyer. On September 5, 1962 defendants accelerated the maturity of the unpaid balance of $346,666.66 and, unaware of the stay, notified the escrow agent who held the pledged stock sold by defendants of their intention to foreclose on said stock.

No further steps, however, were taken to foreclose. By order dated September 15, 1962 the bankruptcy court, on petition of

the buyer's receiver and on consent of defendants, authorized the compromise of defendants' claim for the unpaid balance of the purchase price. The buyer's receiver retained, among other things, all the stock free of the pledge. Fourteen of the original 20 stores constituting defendants' chain were retransferred to defendants' corporate nominee, with the stores' assets and liabilities. In approving the compromise the United States District Judge said: "The market value of the stock  *  *  * is less than the balance of indebtedness due and owing which is secured by pledge of said stock." Thus, defendants have received no part in cash of the balance due under the sales agreement, as was provided in that agreement.

Plaintiff contends he is entitled to the balance of his commissions because defendants suffered no loss by the buyer's default and the acceptance of the compromise constituted a modification of the agreement, and not a rescission. The remaining commissions, however, were payable under the sales agreement only if and when the semiannual installments of the purchase price were paid. Payment in cash of the semiannual installments was a condition precedent which had to be fulfilled to obligate defendants to pay the commission on such installments (*Amies* v. *Wesnofske*, 255 N. Y. 156, 162; *Colvin* v. *Post Mtge. & Land Co.*, 225 N. Y. 510, 516; *Bunnell* v. *Chapman*, 173 App. Div. 108).

In any event, the contract negotiated by plaintiff was not continued with modifications. It was brought to an end by the buyer's breach and default; and defendants and the receiver unquestionably treated it as at least nullified, if not affirmatively rescinded (*Caldwell Co.* v. *Connecticut Mills Co.*, 225 App. Div. 270, affd. 251 N. Y. 565; cf. *Kane* v. *Neptune Shipping*, 274 App. Div. 28).

Nor has plaintiff made any showing that the essential condition precedent of cash payment of the semiannual installments was frustrated or caused to be unfulfilled through fault on the part of defendants. They had not excused performance by the buyer; at most they had acted to salvage what they could of a contract broken by an insolvent debtor (*Amies* v. *Wesnofske*, *supra*, pp. 162, 163; *Spero* v. *Kobler*, 245 App. Div. 643; *Windsor Investing Corp.* v. *McLaughlin's Sons*, 130 Misc. 730, affd. 224 App. Div. 715). And defendants had not used the contract negotiated by plaintiff as an instrument to gain an advantage from the defaulting vendee, but sought, as businessmen, to negotiate the best compromise they could of the situation into which the affairs of the buyer had deteriorated due to its inability to meet its obligations (*Spero* v. *Kobler*, *supra*; *Windsor Investing Corp.* v. *McLaughlin's Sons*, *supra*).

Nor is any issue of fact preserved for trial by plaintiff's contention (contrary to the finding in the bankruptcy court's opinion) that the net value of the 14 stores regained by defendants exceeded the amount of installments due. The contract clearly contemplated payment in cash, not by re-entry of the sellers into the rigors and hazards of a large-scale retail business.

Accordingly, the order entered March 5, 1963 granting plaintiff's motion for summary judgment and the judgment entered thereon dated March 20, 1963 should be reversed, on the law, defendants' cross motion for summary judgment granted and the complaint dismissed, with costs.

STEVENS, STEUER, BERGAN and BASTOW, JJ., concur.

Order and judgment unanimously reversed, on the law, with costs to appellants and defendants' cross motion for summary judgment granted and the complaint dismissed.