[826 NYS2d 190]

HGCD Retail Services, LLC, Respondent, v 44-45 Broadway Realty Co. et al., Appellants.

First Department, November 28, 2006

### APPEARANCES OF COUNSEL

*Rosenberg & Estis, P.C.*, New York City (*Jeffrey Turkel, Warren A. Estis* and *William J. Robbins* of counsel), for appellants.

*Schneider Goldstein Bloomfield LLP*, New York City (*Harvey N. Goldstein* and *Donald F. Schneider* of counsel), for respondent.

### OPINION OF THE COURT

McGUIRE, J.

This appeal arises from the grant of summary judgment to plaintiff HGCD Retail Services, LLC (HGCD) in an action it commenced to obtain a commission in a failed real estate transaction. Under the terms of the controlling written agreement, HGCD is not entitled to a commission. Accordingly, we modify to dismiss the complaint in its entirety.

Defendants 44-45 Broadway Realty Co. (Broadway) and Bowtie Management Co., LLC (Bowtie), entered into a brokerage agreement with HGCD in connection with a contemplated long-term lease by Broadway of a portion of a building it owned in Times Square to a major retailer, Sephora USA, LLC (Sephora). In accordance with a written agreement, Broadway and Bowtie agreed to pay HGCD a broker's commission of approximately $1,400,000. Under paragraph 1 (a), one quarter of the commission (just over $350,000) is payable within 30 days after all "Commission Payment Conditions," a term defined in paragraph 2, have been satisfied. Pursuant to paragraph 1 (b), the "balance" of the commission is payable in 18 equal monthly installments

> "commencing on the first (1st) day of the month in which tenant makes its first payment of Fixed Minimum Rent, other than Fixed Minimum Rent due on execution of the lease (if any) and monthly thereafter on the first (1st) day of each of the next succeeding seventeen (17) months, provided all of the Commission Payment Conditions have been satisfied and subject to the provisions of paragraph 3 [of the agreement]."

Thus, under paragraph 1 (b), Broadway and Bowtie are under no obligation to make any of the 18 installment payments to HGCD unless Sephora makes its first payment of Fixed Minimum Rent, a term not defined in the agreement, other than any such rent that might be due on execution of the lease. As

the provisions of paragraph 2 make clear, this necessary condition to the obligation of Broadway and Bowtie to make any of the installment payments is not also a sufficient condition.

Paragraph 2 provides as follows:

> "It is hereby agreed that your commission shall be deemed earned only if[,] as and when: (a) the Prospective Tenant and Owner execute a Lease and such Lease is delivered by Owner to Tenant; and (b) Owner delivers possession of the Premises to the Prospective Tenant (it being agreed that if Owner does not deliver possession of the Premises to the Prospective Tenant for any reason whatsoever no commission shall be due or payable to you); and (c) the Prospective Tenant is not in default in the payment of Fixed Minimum Rent, Additional Rent or security under the Lease when any installment provided for in paragraph 1 above becomes due; and (d) Tenant has paid all security and Fixed Minimum Rent due upon execution of the Lease (if any) and checks for such security and Fixed Minimum Rent have cleared (the conditions set forth in sections 2 (a) through 2 (d) hereof are collectively referred to herein as the 'Commission Payment Conditions')."

Under this paragraph, accordingly, the obligation to make any of the installment payments to HGCD is conditioned as well on execution and delivery of the lease, Broadway "deliver[ing] possession" of the premises and the satisfaction of the other "Commission Payment Conditions." The terms "delivers possession" and "Additional Rent" also are not defined in the agreement; the term "Premises" is defined, but only in part and with some circularity, as "certain premises . . . in the building known as 1514-1530 Broadway, New York, New York."

That Broadway "delivers possession of the Premises," whatever the terms "delivers possession" and "Premises" may mean, also is a necessary condition to Broadway's obligation to make the payment of one quarter of the total commission. With respect both to this obligation and the obligation to make installment payments to HGCD, an additional necessary condition is that Sephora not be "in default," another undefined term, "in the payment of Fixed Minimum Rent, Additional Rent or security" when the payment (be it the initial commission payment or an installment payment) becomes due.

Paragraph 3, consistent with paragraph 2 (c), provides that if Sephora is "in default in the payment of Fixed Minimum Rent

or Additional Rent" when an installment payment otherwise is due to HGCD, HGCD is "not entitled to receive and [Broadway] is entitled to withhold the installment then due." After thus restating what paragraph 2 provides, paragraph 3 immediately goes on to state that Broadway also is entitled to withhold "all subsequent installments, if any, thereafter falling due unless and until such default is fully cured."

Following the execution of the lease on August 9, 2000, Broadway commenced performing certain "Landlord's Work" called for in the lease. In April 2001, Sephora commenced an action against Broadway in Supreme Court in which Sephora challenged, among other things, Broadway's performance of the Landlord's Work. On September 18, 2001, Broadway sent a letter to Sephora in which it took the position that the Landlord's Work had been substantially completed, enclosed a key to open a door at the premises and stated that it "hereby delivers possession of the Demised Premises" to Sephora. Sephora promptly responded with its own letter rejecting the "purported delivery" of possession and notifying Broadway that it was returning the key. Under the lease, Broadway was obligated to "deliver possession" of the "Demised Premises" by October 1, 2001, which date was "subject to extension due to Unavoidable Delays," and Sephora had the right to terminate the lease by written notice in the event Broadway failed timely to deliver possession. On October 1, Sephora gave such notice and asserted in its letter to Broadway "its right to terminate the Lease due to your failure to deliver possession . . . in accordance with the terms of the Lease by October 1, 2001."

That same day, Broadway commenced a nonpayment action against Sephora in Civil Court. After a flurry of activity in both actions, Broadway and Sephora entered into a settlement agreement on December 14, 2001. Both actions were terminated, as was the lease, and Broadway received a total of $8.75 million from Sephora.[1]

Some two months later, HGCD sent Bowtie an invoice seeking payment of the $1.4 million commission under the broker-

---

1. In an exhibit to the settlement agreement, Sephora "acknowledge[d] and represent[ed]" that Broadway had not "delivered to Sephora possession" of the premises pursuant to the lease and that it had "terminated the Lease because, among other reasons, Broadway did not timely deliver possession of the premises to Sephora." Sephora does not explain in the agreement why it would pay $8.75 million to Broadway while "acknowledg[ing] and represent-[ing]" such significant failures by Broadway. Perhaps the recitations in the exhibit were crafted with a view toward a claim by HGCD that it was entitled to

age agreement. Bowtie promptly responded that no commission was due. HGCD then commenced this action. In its first cause of action, for breach of contract, HGCD seeks the $1.4 million commission; the second cause of action, sounding in quantum meruit, seeks not less than $2.8 million in compensation for the services HGCD allegedly provided to Broadway and Bowtie. HGCD moved for summary judgment on its first cause of action; Broadway and Bowtie cross-moved for summary judgment dismissing both causes of action. By a written decision dated June 30, 2005, Supreme Court granted HGCD's motion in its entirety, denied the cross motion as to the first cause of action and granted the cross motion as to the second cause of action. Broadway and Bowtie, but not HGCD, appeal.

In granting summary judgment to HGCD on its breach of contract claim, Supreme Court reached two separate conclusions relating to the issue of whether Broadway had "deliver[ed] possession" of the premises within the meaning of the brokerage agreement. As noted, such delivery of possession is a necessary condition to HGCD's right to receive any portion of the commission. First, Supreme Court stressed that in both Broadway's nonpayment action in Civil Court and Sephora's action in Supreme Court, Broadway had taken the position that it had delivered possession of the premises. For this reason, Supreme Court held that Broadway was judicially estopped from asserting that it had not delivered possession, notwithstanding Broadway's argument that it never obtained a ruling, judgment or other relief as a result of taking that position and thus was not estopped.[2] Second, Supreme Court held that as a matter of law Broadway delivered possession under the brokerage agreement when it stated in its September 18 letter that it "hereby delivers possession" and enclosed a key.

The only other condition Supreme Court discussed to the obligation of Broadway and Bowtie to pay the commission (and to the right of HGCD to receive it), was "the condition that

the commission. Happily, however, Broadway does not contend that these recitations have any bearing on this litigation.

**2.** Although Bowtie was not a party to either action, Supreme Court referred to the position taken by "defendants," i.e., Bowtie and Broadway, in holding that "defendants" were so estopped. By contrast, Supreme Court rejected the contention that because Sephora had taken the position that Broadway had not delivered possession, HGCD was barred from asserting a contrary position. Broadway and Bowtie, the court ruled, did not present sufficient evidence "to raise an issue of fact as to whether [HGCD] was bound by any argument made by Sephora."

[Broadway] receive the payment of Fixed Minimum Rent before [the] commission could be earned." This condition, Supreme Court ruled, "was satisfied when defendants entered into the Settlement Agreement in December 2001." By entering into the agreement, "Sephora was no longer in default"; the money Sephora paid to Broadway under the settlement "eliminated the rent payments Sephora was otherwise obligated to make" and thus "this condition was satisfied."

Given our interpretation of the brokerage agreement, we need not determine whether Supreme Court erred in its judicial estoppel conclusion. We do, however, note that we have not been alerted to any precedent binding on this Court that upholds such an estoppel when the party ostensibly estopped did not obtain a favorable ruling on the basis of the contrary position taken in the earlier action (*see generally D & L Holdings v Goldman Co.*, 287 AD2d 65, 71-72 [2001], *lv denied* 97 NY2d 611 [2002]).

As noted, paragraph 1 (b) unequivocally provides that a condition precedent to the obligation of Bowtie and Broadway to make the installment payments of the commission is that "Tenant makes its first payment of Fixed Minimum Rent, other than Fixed Minimum Rent due on execution of the Lease (if any)." Although the term "Fixed Minimum Rent" is not defined in the brokerage agreement, it is defined in the lease, the contract that the parties to the brokerage agreement referred to and contemplated would be executed. The parties agree that the term has the same meaning in the brokerage agreement, and they also agree both that the lease calls for Sephora to pay Fixed Minimum Rent and that Sephora never made any such payments.

Under well-settled principles of contract interpretation, the undisputed fact that Sephora never made a payment of Fixed Minimum Rent is fatal to HGCD's claim that it is entitled to the installment payments of the commission. The unequivocal language of the brokerage agreement conditions the obligation to make the installment payments on the payment by Sephora of Fixed Minimum Rent, and that language must be given effect (*see Muzak Corp. v Hotel Taft Corp.*, 1 NY2d 42, 46 [1956]).

As for the obligation to make the payment of one quarter of the total commission, the brokerage agreement also conditions this obligation on the payment by Sephora of Fixed Minimum Rent. After all, paragraph 1 (a) provides that it is not payable until all of the Commission Payment Conditions have been satis-

fied, and one such condition—the one defined in paragraph 2 (c)—is that Sephora not be "in default in the payment of Fixed Minimum Rent . . . when any installment provided for in paragraph 1 . . . becomes due." No installment payment can become due unless Sephora "makes its first payment of Fixed Minimum Rent," and thus the payment of one quarter of the total commission cannot become due unless Sephora makes such a payment of Fixed Minimum Rent. Again, the controlling principle of law, one which is particularly important "in the context of real property transactions, where commercial certainty is a paramount concern," is the "familiar and eminently sensible" one that "when parties set down their agreement in a clear, complete document, their writing should . . . be enforced according to its terms" (*Vermont Teddy Bear Co. v 538 Madison Realty Co.*, 1 NY3d 470, 475 [2004] [internal quotation marks and citations omitted]).

This interpretation of the brokerage agreement is fortified by the language of paragraph 2 specifying when "your commission" is earned. That commission, not some portion of it, "shall be deemed earned only if[,] as and when" all of the Commission Payment Conditions are satisfied. Accordingly, the payment of one quarter of the total commission is not due until after the last installment payment becomes due. Paragraph 1 (a) is to the same effect, for it specifies that this portion of the commission, some $350,000, is payable "within thirty (30) days after all of the Commission Payment Conditions . . . have been satisfied."

Although the payment by Sephora of its "first payment of Fixed Minimum Rent" is not included within paragraph 2 among the other "Commission Payment Conditions," it is nonetheless a condition precedent to the obligation of Broadway and Bowtie to make any commission payments. Any other reading of the brokerage agreement would impermissibly read out of the agreement the language of paragraph 1 (b) expressly conditioning the obligation to make any installment payments of the commission on Sephora's "first payment of Fixed Minimum Rent" (*see Two Guys from Harrison-N.Y. v S.F.R. Realty Assoc.*, 63 NY2d 396, 403 [1984]). By contrast, construing the "first payment of Fixed Minimum Rent" to be an additional condition precedent is fully consonant with the interpretive principle requiring all terms of an agreement to be read together and harmonized whenever reasonably possible (*see Isaacs v Westchester Wood Works*, 278 AD2d 184, 185 [2000]).

A commercial agreement, of course, should not be interpreted in a commercially unreasonable manner or contrary to the rea-

sonable expectations of the parties (*see Matter of Lipper Holdings v Trident Holdings*, 1 AD3d 170, 171 [2003]). There is nothing commercially unreasonable about interpreting this brokerage agreement to condition the owner's obligation to pay a commission on the tenant becoming obligated to pay rent. In effect, that is what the agreement does in conditioning the commission on a payment by Sephora of Fixed Minimum Rent. Of course, the owner's interest in not being obligated to pay a commission unless the prospective tenant is obligated to pay rent is in tension with the broker's interests. That the brokerage agreement would resolve these competing interests so that HGCD also benefitted from Sephora paying rent hardly is anomalous. Nor does this interpretation vitiate all reasonable expectations of HGCD that it would receive a commission. The parties made clear that even upon execution of the lease, payment of a commission was by no means guaranteed. To the contrary, the parties agreed that no commission would be due if Broadway, "for any reason whatsoever," did not deliver possession of the premises to Sephora.[3]

In short, because Sephora never made a payment of Fixed Minimum Rent, Broadway and Bowtie were not obligated to pay a commission to HGCD. Contrary to Supreme Court's reasoning, that conclusion is unaffected by the settlement of the dispute between Broadway and Sephora. The settlement neither "satisfied" the requirement that Sephora make a Fixed Minimum Rent payment nor "eliminated the rent payments Sephora was otherwise obligated to make" under the lease. In essence, Supreme Court rewrote the brokerage agreement by adding to it the following provision:

> "Notwithstanding any other provision of this agreement, in the event that following execution of the Lease and delivery of possession by Owner no payment of Fixed Minimum Rent is made on account of a dispute between Prospective Tenant and Owner, the commission is payable nonetheless if Tenant and Owner settle their dispute and terminate the lease with a payment to Owner by Tenant."

---

3. Notably, under this interpretation HGCD does not shoulder all the risk. Rather, the commission is payable in full years before Broadway can be sure either of full performance by Sephora or even performance for a substantial number of years. Moreover, although the point need not be decided, it may be that if Sephora stopped paying rent after making its first payment of Fixed Minimum Rent, Broadway still would be obligated to pay the commission in full if Sephora, on account of some breach by Broadway, was not in default.

The parties did not agree to such a provision, and "courts may not fashion a new contract under the guise of contract construction" (*Slatt v Slatt*, 64 NY2d 966, 967 [1985] [citation omitted]; *see also Vermont Teddy Bear Co.,* 1 NY3d at 475-476).

Presumably, moreover, Supreme Court would have concluded that no commission was due if the $8.75 million settlement payment by Sephora had been substantially smaller.[4] If so, the necessity for additional judicial revisions attempting to quantify a sufficiently large amount would be apparent; if not, the oddity of requiring a full commission if only a nominal payment by Sephora had been made would be apparent.

This Court's decision in *Caldwell Co., Inc. v Connecticut Mills Co.* (225 App Div 270 [1929], *affd* 251 NY 565 [1929]) is on point. The defendant manufacturer had a contract, which had been procured for it by the plaintiff as its sales agent, with the Fisk Rubber Company pursuant to which Fisk purchased tire fabric. Under the terms of a written agreement between the plaintiff and the defendant, the plaintiff's commissions depended on the amount of fabric actually shipped to Fisk. Eventually, Fisk stopped accepting deliveries in breach of the contract. Negotiations resulted in a settlement providing for the termination of the contract and the payment by Fisk of damages to the defendant. Claiming it was entitled to commissions, the plaintiff obtained a judgment "for commissions upon the purchase price of merchandise which the trial court . . . found would have had to be delivered to yield the defendant as profit the amount paid by way of settlement" (225 App Div at 271).

In his opinion for the Court, Justice Proskauer wrote that in this action at law for breach of a written contract, "that contract is the charter of the plaintiff's rights" (*id.* at 273). For this reason, it was "quite beside the point for plaintiff to urge that inasmuch as the defendant has received the amount by which it would have profited by performance of the agreement [with Fisk], it should in good conscience pay the plaintiff what it would have had to pay him upon performance by [Fisk]" (*id.*). It was beside the point because, even if it were true that the defendant had been made whole by the settlement, "it was still perfectly competent for these parties to contract that in no

4. On the other hand, nothing in Supreme Court's opinion suggests that it regarded as relevant Broadway's assertions that in addition to losing a $95 million income stream, it incurred substantial costs (including $3.75 million for the Landlord's Work it performed and some $400,000 to undo that work) and rerented the premises only after a long delay and in a declining market.

event should commissions be payable except upon the price of goods actually shipped" (*id.* at 273-274). Rejecting the contention that the sales contract between the defendant and Fisk merely had been modified, Justice Proskauer wrote as follows:

> "The sales contract here was in fact brought to an end; in place thereof was substituted an entirely new liability and agreement, namely, a liability for damages because the contract had been breached and an agreement to pay those damages in lieu of performance. The defendant was not to pay commission on damages or on a law suit, but only on the purchase price of goods which it had shipped. Nor is this legal situation at all affected by the circumstance that the seller may have been made whole by the payment of damages." (*Id.* at 277.)

Here, similarly, the lease between Broadway and Sephora terminated with the settlement, Sephora paid a substantial sum to Broadway (although the payment was not characterized as "damages" or otherwise), and under the controlling written agreement Broadway and Bowtie were "not to pay commission on damages or on a law suit" but only if, among other conditions, Sephora made a payment of Fixed Minimum Rent.

HGCD's effort to distinguish *Caldwell* is unpersuasive. It stresses that the defendant in that case, the party from whom the commission was sought, did not breach the underlying agreement between it and Fisk, whereas it contends here that Broadway did breach the lease with Sephora by failing substantially to complete the Landlord's Work. Although the opinion in *Caldwell* notes that there was no contention that the defendant breached the sales contract with Fisk (*id.* at 273), the decision does not turn on that. Rather, the analysis turns on the terms of the contract between the plaintiff and the defendant, which provided that no commissions were payable "except upon the price of goods actually shipped" (*id.* at 274).

Accordingly, HGCD's position is not advanced by indulging the assumption that Broadway so breached its lease with Sephora.[5] Even if it did, that would not alter the terms of the brokerage agreement, the charter of HGCD's rights. Even if there were a basis in law for rewriting that charter, the

---

**5.** Although HGCD would not be bound by the views of Broadway and Sephora on the issue of which party, if any, breached the lease, we note that Sephora, not Broadway, is the party obligated by the settlement to pay $8.75 million to the other party.

ostensible breach by Broadway would not eliminate the intractable issues that would arise, including, in particular, such questions as whether and the extent to which any breach by Broadway or any payment to Broadway by Sephora would be sufficient to require Broadway to pay a commission or some portion of it.

HGCD's related argument, premised on the so-called prevention or hindrance doctrine (*see Amies v Wesnofske*, 255 NY 156, 163 [1931]), is also at odds with the terms of the brokerage agreement. Under this doctrine, "a party to a contract cannot rely on the failure of another to perform a condition precedent where he has frustrated or prevented the occurrence of the condition" (*Kooleraire Serv. & Installation Corp. v Board of Educ. of City of N.Y.*, 28 NY2d 101, 106 [1971]). Thus, or so the argument goes, Broadway cannot rely on Sephora's failure to make a payment of Fixed Minimum Rent—a condition precedent to Broadway's obligation to pay the commission—because Broadway frustrated or prevented the occurrence of that condition by its alleged failure substantially to perform the Landlord's Work that the lease required it to perform.

At bottom, the application of this doctrine rests on an implied obligation under the contract not to frustrate or prevent the performance of the condition precedent (*see Consolidated Edison, Inc. v Northeast Util.*, 426 F3d 524, 529 [2d Cir 2005] [construing New York law and stating that "the prevention doctrine, where it applies, creates nothing more than an *implied* contractual obligation, similar to—and perhaps rooted in—the implied covenant of good faith and fair dealing"]). The implied obligation, accordingly, must be consistent with the intent of the parties to the agreement (*id.*).

The doctrine is inapplicable here for the simple reason that the brokerage agreement cannot be construed to require Broadway to perform the Landlord's Work. To the contrary, the agreement expressly provides that if Broadway did not deliver possession of the premises "for any reason whatsoever," it would not be obligated to pay the commission. Broadway's freedom under the agreement not to deliver possession at all is inconsistent with it being obligated by the same agreement to have substantially completed the Landlord's Work when and if it did deliver possession. Broadway's ostensible failure substantially to perform the Landlord's Work may have been a breach of the lease, but it cannot be construed as a breach of the brokerage agreement. In other words, HGCD is "seeking to achieve

through the prevention doctrine a right denied to [it] under the terms of the [brokerage] [a]greement" (*Consolidated Edison*, 426 F3d at 529).

Two other contentions by HGCD should be addressed. First, in its brief and a subsequently filed motion, HGCD urges that certain arguments pressed by Broadway and Bowtie are not properly before this Court. We need discuss only HGCD's contention that Broadway and Bowtie should not be permitted to argue that no commission is due because of Sephora's not having made a Fixed Minimum Rent payment. The record shows that Broadway and Bowtie at least mentioned this argument before Supreme Court and in their opening brief.[6] That said, it is not clear whether Broadway and Bowtie have ever maintained that the payment of Fixed Minimum Rent is a condition precedent to the obligation to make any commission payments. Rather, Broadway and Bowtie reasonably can be construed to have argued only that it is a condition precedent to the roughly three fourths of the commission that is payable in installments. In any event, whether and the extent to which the payment of Fixed Minimum Rent is a condition precedent to the obligation to pay the commission is a question of law (*see Merritt Hill Vineyards v Windy Hgts. Vineyard*, 61 NY2d 106, 112-113 [1984]). Thus, on this appeal, this Court properly could search the record and grant summary judgment even if Broadway and Bowtie had never argued that the payment of Fixed Minimum Rent was a condition precedent to their obligation to pay the commission (CPLR 3212 [b]; *see Carnegie Hall Corp. v City Univ. of N.Y.*, 286 AD2d 214, 215 [2001]).

Second, and finally, we need not determine whether, as the respondent on this appeal, HGCD can raise its contention that the second cause of action in quantum meruit should be reinstated if the grant of summary judgment to it on the first cause of action for breach of contract is reversed. That is because the second cause of action is meritless. As Supreme Court correctly recognized in dismissing the second cause of action, a valid written agreement covering the dispute in issue precludes HGCD's quantum meruit claim (*see Aviv Constr. v Antiquarium, Ltd.*, 259 AD2d 445, 446 [1999]).

---

**6.** Moreover, Supreme Court addressed it in its opinion. Specifically, Supreme Court stated, "[a]s for the condition that defendants [*sic*] receive the payment of Fixed Minimum Rent before [the] commission could be earned, this condition was satisfied when defendants [*sic*] entered into the Settlement Agreement in December 2001."

Accordingly, the judgment of the Supreme Court, New York County (Charles E. Ramos, J.), entered July 26, 2005, dismissing plaintiff's second cause of action and awarding the principal sum of $1,400,820.31 plus interest on its first cause of action, should be modified, on the law, to dismiss the first cause of action, and otherwise affirmed, with costs in favor of defendants. The Clerk is directed to enter judgment dismissing the second amended complaint. Appeal from order, same court and Justice, entered July 8, 2005, should be dismissed, without costs, as subsumed in the appeal from the judgment.

Motion seeking leave to strike portions of reply brief denied.

SAXE, J.P., MARLOW, GONZALEZ and CATTERSON, JJ., concur.

Judgment, Supreme Court, New York County, entered July 26, 2005, modified, on the law, to dismiss the first cause of action, and otherwise affirmed, with costs in favor of defendants. The Clerk is directed to enter judgment dismissing the second amended complaint. Appeal from order, same court, entered July 8, 2005, dismissed, without costs, as subsumed in the appeal from the judgment. Motion seeking leave to strike portions of reply brief denied.