ONH 14 53rd ST, LLC v TPG RE Fin. 2, Ltd. (2023 NY Slip Op 50421(U))

[*1]

ONH 14 53rd ST, LLC v TPG RE Fin. 2, Ltd.

2023 NY Slip Op 50421(U)

Decided on May 4, 2023

Supreme Court, Kings County

Boddie, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 4, 2023
Supreme Court, Kings County

ONH 14 53rd ST, LLC, and ONH 14 53rd ST MEZZ, LLC, Plaintiffs,

against
TPG RE Finance 2, Ltd., Defendant.

Index No. 502059/2023

Plaintiffs are represented Scott M Kessler, Esq., Akerman LLP, 1251 Avenue Of The Americas 37th Floor, New York, NY 10020. Phone number is 212-880-3800.
Defendant is represented by Jefferson E Bell, Esq., Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, NY 10166. Phone number is 212-351-2395.

Reginald A. Boddie, J.

The following e-filed papers read herein:        
NYSCEF Doc Nos.
MS 1                                                                  8-18; 20-38 
Defendant's motion to dismiss the complaint pursuant to CPLR 321l(a)(l) and (a)(7) is decided as follows:
Background
On September 25, 2020, plaintiffs, ONH 14 53rd ST, LLC, and ONH 14 53rd ST Mezz, LLC (collectively "ONH" or plaintiffs) borrowed $88.9 million (the "Loan") from defendant, TPG RE Finance 2, Ltd. ("TPG"), to buy and renovate a commercial property in Brooklyn known as the "Whale." According to plaintiffs, their principal, Elie Schwartz ("Schwartz"), and TPG executives [*2]have a long-standing and solid personal and business relationship spanning over a decade, which was built on trust and confidence based on the success of their prior dealings. Purportedly due to this close relationship, in the summer of 2022, when TPG decided that it would sell plaintiffs' notes on the Whale, TPG officers reached out to Schwartz and provided plaintiffs with the opportunity to purchase the Loan at a significant discount before marketing them to the public.
Thus, on October 26, 2022, TPG and ONH entered into a loan purchase agreement (hereinafter the "LPA") whereby ONH purchased the Loan for $60 million ("Purchase Amount"), which was approximately a $20 million discount off the outstanding principal balance of plaintiffs' Loan. At signing and pursuant to the LPA, ONH put down $5 million as an "Initial Payment," which would be credited towards the Purchase Amount, with a "Closing Date" of November 30, 2022. The LPA further provided that ONH could extend the Closing Date to December 15, 2022, by making an "Additional Payment" of $2 million by November 30, 2022 (the "LPA Extension"). Such Additional Payment would also be credited towards the Purchase Amount. ONH would pay the remaining balance of $53 million by the Closing Date with "time being of the essence."
In the event ONH failed to make any of the $5 million, $2 million, or $60 million payments, the LPA deemed such failure to pay a "Rescission Event," which authorized TPG to apply the payments to the outstanding balance of the Loan rather than the Purchase Amount. It is undisputed that plaintiffs paid the Additional Payment but failed to pay the balance on December 15, the Closing Date. On December 19, 2022, TPG notified plaintiffs of this Rescission Event.
On January 20, 2023, plaintiffs commenced this action asserting five causes of action: breach of the LPA, breach of the LPA's implied covenant of good faith and fair dealing, promissory estoppel, a declaratory judgment whether a Rescission Event under the LPA has occurred, and a permanent injunction enjoining TPG from closing on a sale, assignment, or other disposition of the notes and loans with any other buyer.
According to plaintiffs, from the very beginning of their discussions with TPG, plaintiffs informed TPG that they intended to hire Cushman & Wakefield ("Cushman") as their broker for the transaction's financing as Cushman had a head start on the complexity of the building's operations, financial performance, and projections, having already been engaged by TPG to market the Loan to potential purchasers other than plaintiffs. Plaintiffs allege that, during the course of their negotiations with TPG, ONH, on multiple occasions, expressly told TPG that the only way it could timely close was by using Cushman as its broker. Plaintiffs further allege that TPG never objected to ONH's planned use of Cushman as its broker or informed ONH of any conflict with ONH's use of Cushman as its broker. However, once the LPA was executed and the $5 million down-payment was made, TPG claimed that Cushman's involvement created a previously undisclosed conflict of interest for TPG that it would not waive. Further, TPG only informed plaintiffs that it would not waive the supposed conflict a couple of weeks before November 30. As a result, plaintiffs represent they made the Additional Payment to extend the Closing Date to December 15. 
At the time of the LPA Extension, plaintiffs allege that TPG assured them that they would allow ONH sufficient time to obtain the necessary financing to close the LPA and would extend the closing date further if necessary to ensure ONH's ability to do so. Plaintiffs allege that Schwartz's long-standing relationship with TPG caused ONH to rely on TPG's oral promises [*3]of extending the closing date beyond December 15 as TPG, in the past, routinely agreed to grant extensions and refrain from terminating agreements to allow Schwartz's business to succeed, which, in turn, has enriched TPG by tens of millions of dollars.
Plaintiffs contend that TPG's promise to further extend the Closing Date is evidenced by the LPA amendment, which took nearly two weeks to finalize and was not fully executed until December 15, 2022, the date of the extended Closing Date. ONH asserts that it would not have entered into the amendment on December 15 if it thought TPG was going to insist that it close that day. Furthermore, under the LPA, TPG was obligated to fund $1.8 million in tenant improvement costs. Although TPG agreed to advance those funds to cover most of the $2 million Additional Payment, TPG did not provide those funds until on or about December 15, 2022, when the amendment to the LPA was fully executed. ONH asserts that it would never have entered into the extension and allowed TPG to use ONH's $1.8 million to fund the Additional Payment or pay an additional $200,000, knowing that those funds would disappear if TPG insisted on a December 15 Closing Date. Plaintiffs contend that it only agreed to enter into the modification and make the Additional Payment based on TPG's repeated assurances and promises that the December 15, 2022 closing date would be extended as necessary so that ONH could obtain financing and close.
TPG's Motion to Dismiss
TPG moves to dismiss the complaint in its entirety. TPG argues that plaintiffs' breach of contract claim ignores the parties' actual contract and cannot be sustained because (1) ONH breached the LPA by not paying the remaining $53 million by December 15; (2) plaintiffs waived and released any claims that it had against TPG under section four of the LPA which contains a general release; and (3) the alleged oral promise to further extend the Closing Date is too vague to be enforced, is not supported by consideration, and is flatly contradicted by the plain language of the LPA.
In addition, TPG argues that plaintiffs' claim of damages is too speculative insofar as it relies on multiple independent decisions by third parties falling plaintiffs' way. Specifically, that plaintiffs would have needed to retain Cushman, find a financing source within the time provided in the LPA, and convince that source to lend plaintiffs $53 million despite plaintiffs having defaulted under the original Loan agreement with TPG.
Regarding plaintiffs' other causes of action sounding in promissory estoppel, breach of the implied covenant of good faith and fair dealing, declaratory judgment, and permanent injunctive relief, TPG argues that same should be dismissed as each is duplicative of the breach of contract claim and is foreclosed by the plain language of the LPA. Moreover, TPG asserts that a claim for promissory estoppel is not viable where there is an express agreement that governs the subject matter. Additionally, that plaintiffs' requested permanent injunction, to enjoin TPG from ever selling or assigning the Loan to any buyer other than plaintiffs, is wildly overbroad and negates a key part of the LPA, which permits TPG to "market the Loan and engage potential purchasers" for an eventual sale to a third party.
Plaintiffs' Opposition
In opposition, plaintiffs contend that TPG made false representations to induce ONH to pay millions of dollars while frustrating ONH's ability to obtain financing. Plaintiffs submit that the documentary evidence demonstrates that, at the same time TPG and ONH discussed a new closing date, TPG was discussing a new deal with nonparty Capstone. As proof that TPG's refusal to allow ONH to work with Cushman was fabricated, plaintiffs claim that Cushman [*4]drafted an engagement agreement with Capstone, the purported new buyer of the Loan, just days after the December 19 notice of a "Rescission Event." Plaintiffs assert that TPG will make approximately $4 million more closing with Capstone than it would have with plaintiffs, due to TPG pocketing ONH's $7 million.
Plaintiffs further contend that they have stated a claim for breach of the LPA by alleging TPG's frustration of plaintiffs' ability to complete the transaction. Specifically, that TPG's refusal to permit ONH to use Cushman and grant plaintiffs access to TPG's "war room" prevented plaintiffs from closing on the LPA, especially given that TPG permitted Capstone to use Cushman and access its war room at virtually the same time. Further, that their claims that TPG orally extended the Closing Date is not precluded by the merger clause since merger clauses do not prohibit the introduction of evidence of a subsequent additional agreement or a modification of the original agreement. In addition, plaintiffs assert that their claims are not precluded by the general release in the LPA since the release applies to pre-execution claims but not to claims of fraud and willful misconduct. Finally, plaintiffs contend that they have sufficiently alleged damages insofar as they claim the loss of their $7 million deposit, loss of the transaction as a whole, and the potential loss of ONH's real estate interest in the Whale, as well as millions of dollars in other damages.
Regarding their other causes of action, plaintiffs contend that such claims are viable and not duplicative. In the event the court finds that any claims merit dismissal, plaintiffs seek leave to amend the complaint under CPLR 3025(b).

Discussion
"A motion to dismiss a complaint based upon documentary evidence under CPLR 3211 (a) (1) may be granted "only where the documentary evidence utterly refutes the plaintiff's factual allegations, conclusively establishing a defense as a matter of law"" (Board of Mgrs. of 100 Congress Condominium v SDS Congress, LLC, 152 AD3d 478, 479 [2d Dept 2017] [citations omitted]). "In deciding a motion to dismiss a complaint pursuant to CPLR 3211 (a) (7) for failure to state a cause of action, the court must accept the facts alleged in the complaint as true, accord the plaintiff the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (Fough v August Aichhorn Ctr. for Adolescent Residential Care, Inc., 139 AD3d 665, 666 [2d Dept 2016] [citations omitted]).
Here, the court finds that TPG is entitled to dismissal of the complaint based on the clear language of the LPA. First, plaintiffs' claim that TPG orally extended the Closing Date beyond December 15 and made repeated assurances regarding further extensions is precluded by the express terms of the LPA which undisputedly contains a no-oral-modification clause. Where oral promises are directly contradicted by the unambiguous terms of the parties' agreement, which precludes any oral modifications, the writing controls (see Can-Am Dev. Corp. v Meldor Dev. Corp., 214 AD2d 695, 696 [2d Dept 1995]; see also Rose v Spa Realty Associates, 42 NY2d 338, 343 [1977]). In addition to the no-oral-modification clause, the LPA contains a "time being of the essence" Closing Date of November 30 with a one-time right to extend the Closing Date to December 15, 2022. Thus, ONH's claim that TPG assured it that the Closing Date would be further extended until ONH could close is directly contradicted by the parties' written agreement. Moreover, ONH fails to allege any new consideration to support the alleged oral modification (see Leavitt Enter., Inc. v Two Fulton Sq., LLC, 181 AD3d 662, 663 [2d Dept 2020] ["consideration is necessary to prove the existence of an oral modification of a written [*5]agreement"]). 
To the extent that plaintiffs rely on the doctrine of promissory estoppel for the purported oral modification of the LPA, plaintiffs' allegations fail to state a claim. The elements of a promissory estoppel claim are: (i) a sufficiently clear and unambiguous promise; (ii) reasonable reliance on the promise; and (iii) injury caused by the reliance (Agress v Clarkstown Cent. Sch. Dist., 69 AD3d 769, 771 [2d Dept 2010]). A party may overcome a contractual "no oral modification" provision and enforce an oral modification to a written contract by showing that the oral modification has been acted upon to completion, or, where there is only partial performance, that such partial performance is unequivocally referable to the alleged oral modification (Eujoy Realty Corp. v Van Wagner Communications, LLC, 22 NY3d 413, 425 [Ct App 2013] [citation omitted]). Here, plaintiffs' allegations do not indicate any performance by ONH in reliance on the oral promise and, thus, there is no ensuing injury. As stated previously, there was no consideration given by plaintiffs for the alleged further extension. Moreover, the fact that plaintiffs entered into the LPA amendment to finalize the $1.8 million payment to TPG cannot constitute evidence of their reliance or consideration for the oral promise as it is undisputed that such sum was paid in consideration of the initial LPA Extension.
Similarly, to the extent that plaintiffs assert that TPG breached the implied covenant of good faith and fair dealing by purportedly acting as if the Closing Date would be extended on or around December 15, such claim fails to state a claim. "The implied covenant of good faith and fair dealing is breached when a party acts in a manner that would deprive the other party of the right to receive the benefits of their agreement" (1357 Tarrytown Rd. Auto, LLC v Granite Props., LLC, 142 AD3d 976, 977 [2d Dept 2016] [citations omitted]). "The implied covenant includes any promises which a reasonable promisee would be justified in understanding were included" (id. citing Dalton v Educational Testing Serv., 87 NY2d 384, 389 [Ct App 1995]). Here, it cannot be said that plaintiffs were deprived of the benefits of the LPA since the payment of the $1.8 million to TPG fulfilled ONH's obligation under the LPA Extension.
As for plaintiffs' contention that TPG breached the LPA by preventing ONH's performance, plaintiffs' own allegations undermine this claim. Under the prevention doctrine, "a party to a contract cannot rely on the failure of another to perform a condition precedent where he has frustrated or prevented the occurrence of the condition" (HGCD Retail Servs., LLC v 44-45 Broadway Realty Co., 37 AD3d 43, 53 [1st Dept 2006] [citation omitted]). "[T]he application of this doctrine rests on an implied obligation under the contract not to frustrate or prevent the performance of the condition precedent" (id.). However, the prevention doctrine does not protect a party when the contingency was foreseeable and defendants' acts were consistent with the agreement (Ninth St. Assocs. v 20 E. Ninth Corp., 114 AD3d 518, 519 (1st Dept 2014). Rather, the doctrine requires the breaching party's active conduct preventing or hindering the fulfillment of the condition (Blackrock Balanced Capital Portfolio (FI) v U.S. Bank N.A., 165 AD3d 526, 527 [1st Dept 2018]).
Here, refusing to permit ONH to retain Cushman, as its broker of choice, to find financing does not constitute active conduct preventing ONH from fulfilling its obligation under the LPA as, presuming the necessity of a broker for the subject transaction, ONH was free to retain any other broker. More importantly, plaintiffs' own allegations reveal that ONH did not regard TPG's refusal as a hindrance to its performance, since ONH proceeded with the transaction and opted for the extension under the LPA despite the refusal. 
Based on the foregoing determinations, plaintiffs' causes of action fail as a matter of law. [*6]Accordingly, defendant's motion to dismiss the complaint is granted and the complaint is dismissed. Any argument not explicitly addressed herein was considered and deemed to be unpersuasive.
E N T E R:
_________________________
Honorable Reginald A. Boddie
Justice, Supreme Court